**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

PATRICIA ABDI,                                         CASE NO.: 0:21-cv-61015

    Plaintiff,

v.

BP EXPRESS, INC., and RYDER TRUCK
RENTAL, INC.,

    Defendants.
_____/

## COMPLAINT FOR NEGLIGENCE

Plaintiff, Patricia Abdi (the "Plaintiff"), by and through counsel, sues Defendants, BP Express, Inc. ("BP") and Ryder Truck Rental, Inc. ("Ryder") (collectively, the "Defendants"), and states:

### JURISDICTION AND VENUE

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

2. Venue is proper pursuant to 28 U.S.C. § 1391 because the conduct complained of occurred within this District.

3. The Defendants are amenable to jurisdiction as both entities engage in substantial business in and committed tortious acts in Broward County, Florida.

### PARTIES

4. The Plaintiff is a citizen and resident of California.

5. BP is a Tennessee corporation operating in Broward County, Florida.

6. Ryder is a Florida corporation operating in Broward County, Florida.

## ALLEGATIONS

7. On the morning of January 27, 2020, the Plaintiff was the seat-belted driver of a Honda Accord traveling on the sixth paved travel lane heading east on Interstate 595 west of State Road 84 in Ft. Lauderdale, Florida. At the time, the Plaintiff was on her way to work for her then employer the Florida Attorney General's Office.

8. At that time, an agent of BP was driving a 2020 semi-cab on the fifth paved travel lane on the same road and in the same direction as the Plaintiff. BP's agent driving the semi-cab was 73 years old according to his driver's license. *See* Crash Report attached as Exhibit 1.

9. As the Plaintiff was preparing to use to the exit ramp to get off of Interstate 595, BP's vehicle suddenly attempted to merge into the Plaintiff's lane.

10. According to the diagram accompanying the crash report and eyewitness statements, BP's agent also wanted to use the exit ramp to get off of Interstate 595, realized he was about to miss the exit, and quickly and without confirming it was safe to do so, attempted to merge into the Plaintiff's lane in order to make the exit. *See* Ex. 1.

11. Immediately upon realizing that an impending collision was imminent, the Plaintiff used her car horn to alert BP's agent that it was not safe to merge into her lane.

12. However, BP's agent did not respond to the car horn. BP's agent was not completely focused on the road. Instead BP's agent was completely focused on not missing the exit.

13. BP's agent continued his attempt to merge into the Plaintiff's lane and in doing so the massive commercial vehicle collided with the Plaintiff's tiny Honda at great speed.

14. The Plaintiff's car spun around and came to rest in front of BP's vehicle.

15. While waiting for the police to arrive, the Plaintiff called her then supervisor, the Deputy Assistant Statewide Prosecutor to the Attorney General. The Plaintiff informed her supervisor that she was involved in a car crash and would be late to work.

16. Concerned for the Plaintiff, her supervisor drove to the scene of the collision to offer

her assistance. Upon her arrival, the Plaintiff and her supervisor had a conversation with the BP's agent.

17. Both the Plaintiff and her supervisor made contemporaneous notes of their conversation with BP's agent. *See* Contemporaneous Notes attached as Exhibit 2.

18. Consistent with the diagram accompanying the crash report, BP's agent initially told the Plaintiff "he was getting off the exit to go to Fort Lauderdale port for work." *See* Ex. 2. He also admitted he "was switching lanes b/c traffic in his lane." *Id.* He specifically told the Plaintiff he "wanted to leave my lane + merge but couldn't b/c I hit her." *Id.*

19. According to the Plaintiff's supervisor, BP's agent was wearing "sweat pants + T shirt with writing." *See* Ex. 2. He told the Plaintiff's supervisor "he didn't see her [the Plaintiff's vehicle] because truck was too high and that [he] couldn't hear horn honk." *Id.* BP's agent also told the Plaintiff's supervisor "hard to see in big trucks." *Id.*

20. The Plaintiff's supervisor further noted that BP's agent "was wearing blue tooth headset that covered [his] entire ear." *See* Ex. 2. The headset likely explains why he did not hear or react to the Plaintiff's car horn. *Id.*

21. However, once the police arrived at the scene, not surprisingly, BP's agent changed his tune. At that time, he denied merging into the Plaintiff's lane.

22. The Plaintiff's supervisor noted, the responding officer "never truly examined the car + never asked if everyone was okay." *See* Ex. 2. "Both [the Plaintiff] and I explained that driver admitted to us that it was his fault + that he hit her. Damage was consistent with a semi hitting (changing lanes) into small Honda." *Id.*

23. However, "Trooper didn't seem to be concerned or care." *See* Ex. 2. Undeterred, The Plaintiff's supervisor "tried to explain veh. could not have left lane because was stopped from doing so once it hit [the Plaintiff's] car …." *Id.*

24. The incident caused the Plaintiff to sustain severe medical injuries.

3

25. All conditions precedent have either occurred, been performed by the Plaintiff, or have been waived.

## COUNT I – NEGLIGENCE (AS TO BP)

26. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 25 as if set forth here in full.

27. At all times material hereto, the vehicle operated by BP constituted a dangerous instrumentality.

28. All the acts or omissions complained of were performed by employees of BP, while acting within the scope of their employment, and with the permission and consent of BP.

29. BP owed a duty to the public, and specifically to the Plaintiff, to operate its vehicle in a reasonably safe manner.

30. BP breached this duty and was negligent in its failure to operate its vehicle in a safe and reasonable manner.

31. BP breached this duty and was negligent in its failure to operate its vehicle carefully and avoid hitting other drivers and in its failure to use reasonable care to prevent injury to persons and property within the path of its vehicle.

32. BP breached this duty and was negligent in its failure to operate its vehicle in compliance with state and local traffic laws.

33. BP breached this duty and was negligent in its failure to maintain a safe distance from the Plaintiff's vehicle.

34. BP breached this duty and was negligent in its failure to keep an adequate and proper lookout.

35. BP breached this duty and was negligent in its failure to obey traffic signs and/or signals.

36. BP's negligent operation of the vehicle directly and proximately caused the collision

with the Plaintiff's vehicle.

37. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff's automobile was damaged and the Plaintiff lost the use of it during the period required for its repair.

38. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff suffered significant and permanent loss of an important bodily function and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

39. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff suffered significant and permanent scarring or disfigurement and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

40. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

41. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff incurred, and will continue to incur for an indefinite time, medical expenses for her care and treatment in an effort to alleviate and cure her injuries sustained in this incident.

42. As a direct and proximate result of the negligence of BP and the resulting collision, the Plaintiff has suffered loss of earnings, loss of employment benefits, and loss of the ability to earn money.

43. All of the Plaintiff's above-referenced injuries are permanent and continuing in nature.

**WHEREFORE**, the Plaintiff demands judgment against BP, in excess of $75,000.00, for (a) for general damages; (b) for all medical and incidental expenses according to proof; (c) for all loss of

earnings according to proof; (d) for repair or replacement of Plaintiff's motor vehicle according to proof; (e) for loss of use of plaintiff's motor vehicle according to proof; (f) for costs of suit incurred in connection with this action; and (g) for any further legal or equitable relief the Court may deem just and proper.

### COUNT II – NEGLIGENCE (AS TO RYDER)

44. The Plaintiff realleges, and incorporates by reference, the allegations set forth above in paragraphs 1 through 25 as if set forth here in full.

45. At all times material hereto, Ryder owned and operated the vehicle that struck the Plaintiff.

46. At all times material hereto, the vehicle owned by Ryder constituted a dangerous instrumentality.

47. On January 27, 2020, BP was operating Ryder's vehicle with its knowledge and consent.

48. All the acts or omissions complained of were performed by employees of Ryder, while acting within the scope of their employment, and with the permission and consent of the Defendant.

49. Ryder owed a duty to the public, and specifically to the Plaintiff, to exercise reasonable care when renting of leasing its vehicles to third parties to ensure that the renter or lessor has the requisite ability to operate the vehicle safely.

50. Ryder breached this duty and was negligent in renting or leasing the use of its vehicle to BP.

51. Ryder breached this duty and was negligent in renting or leasing a semi-truck to BP's 73-year-old agent driver.

52. Ryder's negligent entrustment of the vehicle to BP directly and proximately caused the collision with the Plaintiff's vehicle.

53. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff's automobile was damaged and the Plaintiff lost the use of it during the period required for its repair.

54. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff suffered significant and permanent loss of an important bodily function and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

55. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff suffered significant and permanent scarring or disfigurement and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

56. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff suffered bodily injury that is permanent within a reasonable degree of medical probability and resulting pain and suffering, disability, disfigurement, mental anguish, and loss of capacity for the enjoyment of life.

57. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff incurred, and will continue to incur for an indefinite time, medical expenses for her care and treatment in an effort to alleviate and cure her injuries sustained in this incident.

58. As a direct and proximate result of the negligence of Ryder and the resulting collision, the Plaintiff has suffered loss of earnings, loss of employment benefits, and loss of the ability to earn money.

**WHEREFORE**, the Plaintiff demands judgment against Ryder, in excess of $75,000.00, for (a) for general damages; (b) for all medical and incidental expenses according to proof; (c) for all loss of earnings according to proof; (d) for repair or replacement of Plaintiff's motor vehicle according to proof; (e) for loss of use of plaintiff's motor vehicle according to proof; (f) for costs of suit incurred

in connection with this action; and (g) for any further legal or equitable relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

The Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38.

Dated: May 13, 2021.

                                Respectfully Submitted By:

                                Gulisano Law, PLLC
                                5645 Coral Ridge Drive, Suite 207
                                Coral Springs, FL 33076
                                954-947-3972 – office
                                michael@gulisanolaw.com – email

                                s/ Michael Gulisano
                                Michael Gulisano, Esquire
                                Florida Bar No.: 87573